

FILED by ____MM____ D.C.

Jun 9, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **22-60128-CR-RUIZ/STRAUSS**

18 U.S.C. § 1347
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 1957
18 U.S.C. § 982

UNITED STATES OF AMERICA

v.

**LEONEL DIAZ CASTILLO** and
**JULIAN LOPEZ**,

        **Defendants.**
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1.    The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.    Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3. Medicare covered different types of benefits and was separated into different program "parts." Medicare "Part A" covered, among other things, health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Medicare "Part B" covered, among other things, physician services and outpatient care, including an individual's access to durable medical equipment ("DME"), such as orthotic devices and wheelchairs.

4. Medicare "providers" included independent clinical laboratories, physicians, DME companies, and other health care providers who provided items or services to beneficiaries. To bill Medicare, a provider was required to submit a Medicare Enrollment Application Form ("Provider Enrollment Application") to Medicare. The Provider Enrollment Application contained certifications that the provider was required to make before the provider could enroll with Medicare. Specifically, the Provider Enrollment Application required the provider to certify, among other things, that the provider would abide by the Medicare laws, regulations, and program instructions and that the provider would not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare.

5. A Medicare "provider number" was assigned to a provider upon approval of the provider's Medicare Enrollment Application. A provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

6. Providers enrolled with Medicare agreed to abide by the policies, procedures, rules, and regulations governing reimbursement. Providers were given access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

7. A Medicare claim was required to contain certain important information, including: (a) the beneficiary's name and Health Insurance Claim Number ("HICN") and/or Medicare

Beneficiary Identification Number ("MBI"); (b) a description of the health care benefit, item, or service that was provided or supplied to the beneficiary; (c) the billing codes for the benefit, item, or service; (d) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; (e) the name of the referring physician or other health care provider; and (f) the referring provider's unique identifying number, known either as the Unique Identification Number ("UPIN") or National Provider Identifier ("NPI").

8. When submitting claims to Medicare for reimbursement, providers were required to certify that: (1) the contents of the forms were true, correct, and complete; (2) the forms were prepared in compliance with the laws and regulations governing Medicare; and (3) the services that were purportedly provided, as set forth in the claims, were medically necessary.

9. Medicare claims were required to be properly documented in accordance with Medicare rules and regulations.

### Part B Coverage and Regulations

10. CMS acted through fiscal agents called Medicare administrative contractors ("MACs"), which were statutory agents for CMS for Medicare Part B. The MACs were private entities that reviewed claims and made payments to providers for services rendered to beneficiaries. The MACs were responsible for processing Medicare claims arising within their assigned geographical area, including determining whether the claim was for a covered service.

11. Payments under Medicare Part B were often made directly to the health care provider rather than to the patient or beneficiary. For this to occur, the beneficiary would assign the right of payment to the health care provider. Once such an assignment took place, the health care provider would assume the responsibility for submitting claims to, and receiving payments from, Medicare.

12. Medicare reimbursed DME companies and other providers for items and services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare electronically, via interstate wires, either directly or through a billing company.

### **Durable Medical Equipment**

13. DME included reusable medical equipment such as orthotic devices, walkers, canes, or hospital beds. Orthotic devices were a type of DME that included rigid and semi-rigid devices, such as knee braces, back braces, shoulder braces, ankle braces, and wrist braces (collectively, "braces").

14. A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary for the treatment of the beneficiary's illness or injury and prescribed by a licensed medical professional.

### **The Defendants, Related Entities, and Relevant Persons**

15. One Medical Services Corp ("One Medical Services") was a company formed under the laws of Florida with its listed place of business in Broward County, Florida. One Medical Services was a medical supply company enrolled with Medicare that purported to provide DME to individuals, including Medicare beneficiaries. One Medical Services held an account at Bank 1 ending in -4863 (the "One Medical Services Bank Account").

16. Rapido Shipping Inc. ("Rapido Shipping") was a company incorporated under the laws of Florida with its listed place of business in Broward County, Florida. Rapido Shipping held an account at Bank 1 ending in -6057 (the "Rapido Shipping Bank Account").

17. Tiger Tileand Floors Inc. ("Tiger Tileand Floors") was a company incorporated under the laws of Florida with its listed place of business in Broward County, Florida. Tiger

Tileand Floors held an account at Bank 2 ending in -4772 (the "Tiger Tileand Floors Bank Account").

18. Palacio Windows & Doors Inc. ("Palacio Windows & Doors") was a company incorporated under the laws of Florida with its listed place of business in Broward County, Florida. Palacio Windows & Doors held an account at Bank 3 ending in -1460 (the "Palacio Windows & Doors Account").

19. Castillo Logistics Services Inc. ("Castillo Logistics") was a company incorporated under the laws of Florida with its listed place of business in Broward County, Florida. Castillo Logistics held an account at Bank 3 ending in -5984 (the "Castillo Logistics Account").

20. Reina 3 Property Management Inc. ("Reina 3 Property Management") was a company incorporated under the laws of Florida with its listed place of business in Broward County, Florida. Reina 3 Property Management held an account at Bank 4 ending in -7695 (the "Reina 3 Property Management Account").

21. First International Services Corp. ("First International") was a company formed under the laws of Florida with its listed place of business in Miami-Dade County.

22. Company 1 was a company incorporated under the laws of Florida with its listed place of business in Miami-Dade County.

23. Defendant **LEONEL DIAZ CASTILLO** was a resident of Miami-Dade County and owner of One Medical Services, Rapido Shipping, Tiger Tileand Floors, Palacio Windows & Doors, and Castillo Logistics. **DIAZ CASTILLO** was also the sole signatory of the One Medical Services Bank Account, the Rapido Shipping Account, the Tiger Tileand Floors Account, the Palacio Windows & Doors Account, the Castillo Logistics Account, and the Reina 3 Property Management Account.

24. Defendant **JULIAN LOPEZ** was a resident of Miami-Dade County.

25. Francisco Rodriguez De Diego ("Rodriguez De Diego") was a resident of Miami-Dade County and owner of First International.

26. Individual 1 was a resident of Miami-Dade County and owner of Company 1.

## COUNTS 1–4
### Health Care Fraud
### (18 U.S.C. § 1347)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around February 2021, and continuing through in or around September 2021, in Broward and Miami-Dade Counties, in the Southern District of Florida, and elsewhere, the defendants,

**LEONEL DIAZ CASTILLO and
JULIAN LOPEZ,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of said health care benefit program.

### Purpose of the Scheme and Artifice

3. It was a purpose of the scheme and artifice for the defendants and their accomplices to unlawfully enrich themselves by, among other things, (a) offering money and paying for beneficiaries' names and unique Medicare enrollment numbers, (b) submitting and causing the submission of false and fraudulent claims to Medicare through One Medical Services for DME

that was not medically necessary, not eligible for Medicare reimbursement, and not actually provided to Medicare beneficiaries, (c) concealing the receipt of the fraud proceeds, and (d) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

### The Scheme and the Artifice

4. **LEONEL DIAZ CASTILLO** acquired One Medical Services, a DME supplier, to defraud Medicare through a fraudulent billing scheme.

5. **JULIAN LOPEZ** paid individuals in exchange for Medicare beneficiaries' personal identifiable information, including their unique Medicare identification numbers, to be used by One Medical Services to submit false and fraudulent claims to Medicare.

6. **LEONEL DIAZ CASTILLO** and **JULIAN LOPEZ** submitted and caused the submission of false and fraudulent claims to Medicare, on behalf of One Medical Services, using the personal identifiable information obtained by **LOPEZ**. The false and fraudulent claims for DME submitted to Medicare by **CASTILLO** and **LOPEZ** totaled approximately $3,248,540, and the DME was not medically necessary, not eligible for reimbursement, and not actually provided to Medicare beneficiaries.

7. As a result of these false and fraudulent claims, **LEONEL DIAZ CASTILLO**, through One Medical Services, received payments from Medicare in the approximate amount of $1,496,412 into the One Medical Services Bank Account.

### Acts in Execution of the Scheme and Artifice

8. On or about the dates set forth below, in Broward County, in the Southern District of Florida, and elsewhere, the defendants, as specified in each count below, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice, in that the

defendants submitted and caused the submission of false and fraudulent claims seeking the identified dollar amounts, and representing that One Medical Services provided medical items and services to the Medicare beneficiaries pursuant to the claims as set forth below:

| Count | Defendant(s) | Beneficiary | Approx. Date of Submission | Claim Number Last Four Digits | Services Claimed; Approx. Amount Claimed |
|---|---|---|---|---|---|
| 1 | **DIAZ CASTILLO and LOPEZ** | M.P. | 3/8/2021 | -5000 | L1005 (tension-based scoliosis orthosis; $4,000) |
| 2 | **DIAZ CASTILLO and LOPEZ** | L.C. | 3/8/2021 | -6000 | L1005 (tension-based scoliosis orthosis; $4,000) |
| 3 | **DIAZ CASTILLO** | A.W. | 4/8/2021 | -1000 | L3761 (elbow orthosis; $600) and L1005 (tension-based scoliosis orthosis; $4,000) |
| 4 | **DIAZ CASTILLO** | M.M. | 4/8/2021 | -7000 | L3761 (elbow orthosis; $600) and L1005 (tension-based scoliosis orthosis; $4,000) |

In violation of Title 18, United States Code, Sections 1347 and 2.

### COUNTS 5–6
### Money Laundering
### (18 U.S.C. § 1956(a)(1)(B)(i))

1. The General Allegations section of this Indictment is realleged and incorporated by reference as if fully set forth herein.

2. On or about the dates specified below as to each count, in Broward and Miami-Dade Counties, in the Southern District of Florida, and elsewhere, the defendant,

**LEONEL DIAZ CASTILLO,**

8

did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, as set forth below:

| Count | Approx. Date of Transaction | Description of Financial Transaction |
|---|---|---|
| 5 | 5/13/2021 | Transfer of funds in the amount of $8,905.15 by cashier's check from Reina 3 Property Management Account to Company 1 |
| 6 | 5/27/2021 | Check in the amount of $12,900.12 from Rapido Shipping Account cashed by First International Services |

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

### COUNTS 7–10
### Money Laundering
### (18 U.S.C. § 1957(a))

1. The General Allegations section of this Indictment is realleged and incorporated by reference as if fully set forth herein.

2. On or about the dates specified below as to each count, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**LEONEL DIAZ CASTILLO,**

did knowingly engage and attempt to engage in a monetary transaction affecting interstate commerce, by, through, and to a financial institution, in criminally derived property of a value of greater than $10,000, and such property having been derived from specified unlawful activity,

knowing that the property involved in the monetary transaction was derived from some form of unlawful activity, as set forth below:

| Count | Approx. Date of Transaction | Description of Monetary Transaction |
|---|---|---|
| 7 | 4/29/2021 | Deposit of Check for $19,700 from One Medical Services into Reina 3 Property Management Account |
| 8 | 5/19/2021 | Wire Transfer of $80,000 from One Medical Services Account to Rapido Shipping Account |
| 9 | 5/22/2021 | Cashing of Check for $21,850.31 from Rapido Shipping Account to First International |
| 10 | 6/11/2021 | Cashing of Check for $15,200 from Castillo Logistics Account to Company 1 |

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347.

In violation of Title 18, United States Code, Sections 1957(a) and 2.

## FORFEITURE

1. The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for alleging criminal forfeiture to the United States of certain property in which any of the defendants, **LEONEL DIAZ CASTILLO** and **JULIAN LOPEZ** have an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1347, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3. Upon conviction of a violation of Title 18, United States Code, Sections 1956 and 1957, as alleged in this Indictment, **LEONEL DIAZ CASTILLO** shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4. If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to the forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 982(a)(1), Title 18, United States Code, Section 982(a)(7), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b).

A TRUE BILL

_____
FOREPERSON

_____
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

JOSEPH S. BEEMSTERBOER, ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
EMILY GURSKIS
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO.: |
|---|---|
| v. | |
| LEONEL DIAZ CASTILLO, et al., | **CERTIFICATE OF TRIAL ATTORNEY*** |
| _____/ | **Superseding Case Information:** |
| Defendants. | |

**Court Division** (select one)
- ☐ Miami   ☐ Key West   ☐ FTP
- ☑ FTL     ☐ WPB

New Defendant(s) (Yes or No)
Number of New Defendants
Total number of New Counts

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) Yes
   List language and/or dialect: Spanish

4. This case will take 6 days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I    ☐ 0 to 5 days
   - II   ☑ 6 to 10 days
   - III  ☐ 11 to 20 days
   - IV   ☐ 21 to 60 days
   - V    ☐ 61 days and over

   (Check only one)
   - ☐ Petty
   - ☐ Minor
   - ☐ Misdemeanor
   - ☑ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____

9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No

By: _____
EMILY GURSKIS
DOJ Trial Attorney
Court ID No.   A5502499